WESTFALL ET AL., APPELLEES, *v.* AMERICAN STATES INSURANCE
Co., APPELLANT.

(No. 32348—Decided March 21, 1974.)

*Mr. Julien Renswick,* for appellees.
*Messrs. Ulmer, Berne, Laronge, Glickman & Curtis,*
and *Mr. Ronald H. Isroff,* for appellant.

JACKSON, J. This is an appeal from a judgment entered by the Common Pleas Court of Cuyahoga County, sitting without a jury, in favor of plaintiffs appellees, John C. Westfall, et al., and against defendant appellant, The American States Insurance Company.

Appellees were the owners of certain premises on Franklin Boulevard, in Cleveland, Ohio. These premises consisted of a lot with two frame buildings, one behind the other.

On April 22, 1970, appellant issued a fire insurance policy to the appellees, insuring these two frame buildings. The pertinent clause of this policy provided:

". . . this company . . . to an amount not exceeding . . . [$9,000] . . . does insure the insured named above . . . to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount it would cost to repair or replace the property with materials of like kind and quality . . . nor in any event for more than the interest of the insured . . . against all direct loss by fire . . ."

On March 26, 1971, the appellees contracted to sell the premises on Franklin Boulevard, including the two buildings, for a total consideration of $8,000. A clause in this contract provided: "Buildings on premises to be razed by purchaser."

On April 17, 1971, the rear building was damaged by fire. Subsequent to this fire, on June 11, 1971, title to the premises was transferred to the new owners and the appellees received the full consideration of $8,000.

Appellees sued appellants for the full amount of the insurance coverage. The trial court awarded the appellees $8,373, plus interest. Appellant assigns three errors for review by this court.

Appellant contends that the trial court erred in holding that the sellers of a building had an insurable interest and could recover under their insurance policy for a fire loss to the building when the sales contract, entered into prior to the loss, required the purchasers to demolish the building. We find merit in this assignment of error.

A long-standing axiom of insurance law is that an in-

sured must have an insurable interest in the property before he can recover on a policy insuring against damages to the property. *Connecticut Mut. Life Ins. Co.* v. *Schaefer* (1876), 94 U. S. 457; *Richland County Mut. Ins. Co.* v. *Sampson* (1883), 38 Ohio St. 672; *Great Am. Ins. Co.* v. *Curl* (1961), 88 Ohio Law Abs. 516.

Neither party disputes the proposition that a vendor of real property retains his insurable interest until title is transferred. The narrow issue presented by this case is whether the contractual provision in the purchase agreement that the buildings on the premises were to be "razed by the purchaser" eliminated appellees' insurable interest in these buildings. This issue has apparently not been previously resolved in a reported opinion from this state.

After considering economic realities rather than merely examining the state of legal title, we conclude that the appellees did not retain an insurable interest in the building which they had contracted to sell and have destroyed by the purchaser.

The rationale for the rule that an insured party must have an insurable interest in the insured property stems from the public policy against "wager policies." A "wager policy" is one in which the insured has interest only in the loss or destruction of the property. Having contracted to sell the premises and have the building "razed by the purchaser," the appellees would gain no profit or advantage from the continued existence of the building. Appellees have failed to demonstrate that they were in any way injured by the destruction of the building. They suffered no economic disadvantage from the fire, as they were paid the full contract price for the premises by the purchasers. Under these circumstances, a conclusion that the appellees retained no insurable interest is mandated by the spirit and purpose of the rule prohibiting wagering policies, as well as fundamental fairness.

Courts in other jurisdictions have reached a similar conclusion. In *Royal Ins. Co.* v. *Sisters of Presentation* (9th Cir. 1970), 340 F. 2d 759, the owners of an old convent had moved into a new building and contracted to have the old abandoned building demolished. Before demolition began,

the old building was destroyed by fire. The Ninth Circuit reversed an award of $174,000 to the insureds on the basis that the owners did not retain an insurable interest in the property. In accord are: *Garcy Corp.* v. *The Home Ins. Co.* (1973), 353 F. Supp. 329; *Aetna State Bank* v. *Maryland Cas. Co.* (1972), 345 F. Supp. 903; *Lieberman* v. *Hartford Fire Ins. Co.* (Ill. App. 1972), 287 N. E. 2d 38; *Leggio* v. *Millers Nat'l Ins. Co.* (Tex. Civ. App. 1965), 398 S. W. 2d 607.

The appellant further contends that the trial court erred in admitting hearsay testimony of plaintiffs appellees' repairman, which testimony was based solely on an unidentified publication. We find no merit in this assignment of error.

The testimony which appellant finds objectionable was given by one John B. Wright concerning the reasonable cost to repair the burned building. Mr. Wright qualified as an expert because of his work in the contracting field. Mr. Wright stated that he relied on a "little magazine" in arriving at his prices for doors, windows, etc. Appellant's counsel objected on the ground that he had no effective way to cross-examine since the "little magazine" wasn't available. After carefully establishing that Mr. Wright used the "little magazine" as a reference (R. 22), the trial court overruled appellant's objection. We cannot say that the trial court's action was improper. The extent to which expert and opinion evidence may be received rests largely with the discretion of the trial court. *Wabash Ry. Co.* v. *Defiance* (1895), 52 Ohio St. 262, aff'd 167 U. S. 88 (1897). A scientific expert may base his opinion on knowledge gained from publications. *Bluebird Baking Co.* v. *McCarthy* (1935), 19 Ohio Law Abs. 466. An expert may testify as to value even though his conclusions are based in part, or even entirely, upon hearsay evidence. *Masheter* v. *C. H. Hooker Trucking Co.* (1969), 19 Ohio App. 2d 169, 170.

The appellant argues that the amount of the judgment was excessive. This assignment of error is also without merit.

If the appellees are found to have an insurable inter-

est in the building in question there is ample evidence in the record to support the judgment of $8,373. Plaintiffs' expert testified that the cost of repair would be $10,610.50. Allowing, as required, for depreciation, depletion and deterioration of the neighborhood, the trial court could have reasonably arrived at a judgment of $8,373.

For reasons assessed under the first assignment of error, the judgment of the trial court is reversed and judgment entered for defendant appellant.

*Judgment reversed.*

DAY, J., concurs.
KRENZLER, P. J., dissents.

KRENZLER, P. J., dissenting. I respectfully dissent from the majority opinion and judgment.

Plaintiffs, John G. and Annie Westfall were the owners of property at 4712-4714-4716 Franklin Boulevard in the City of Cleveland.

There were two two-family dwellings on the property, one at the front and one at the rear.

Plaintiff had a three year fire and extended coverage policy, Number AF-271-778 with American States Insurance Company, which ran from April 22, 1970 through April 22, 1973 with a total premium of $327.

The fire coverage was for $11,000 on the front two-family frame house and for $9,000 on the rear two-family frame house.

The insurance policy provided coverage "" * * * to an amount not exceeding the amount specified above * * * to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss * * * ."

On March 26, 1971 a contract for the sale of the land and buildings for $8,000 was entered into by and between the plaintiffs, as sellers, and George A. and Vienna Cain, as

the purchasers. The contract had a provision that the buildings on the premises were to be raised by the purchaser. The contract also provided that the sellers would assume all liabilities for the premises until the transfer of title. Possession of the premises were to be given by the owner to the purchaser on the date of transfer of title.

On April 17, 1971 there was a fire in the rear building, which was reported to the defendant insurance company.

The plaintiff asked the insurance company to make payment under the terms of the policy and there was a refusal.

The title to the property was transferred to the Cains on June 11, 1971 but this is not relevant to the issues in this case.

On March 27, 1972 the plaintiffs brought an action in the Common Pleas Court against the American States Insurance Company alleging: that they the plaintiffs were the owners of the rental property situated at 4712-14-16 Franklin Boulevard and that there was in effect a policy of fire insurance providing coverage of $9,000; there was a fire on April 17, 1971 on the rear building and that it was destroyed; and that the insurance company refused to make payment under the policy. The plaintiffs were seeking $9,000.

The defendant American States Insurance Company, filed an answer admitting that it issued the insurance policy for the building in the amount of $9,000 and that a fire occurred on April 17, 1971; and that it was notified of the fire but has not paid any sums to the plaintiff; and that it is without knowledge or information as to the remaining allegations in the complaint.

For its second defense, it alleges that on or about March 26, 1971, the plaintiffs entered into a binding agreement to sell the property, which provided that the buildings were to be raised by the purchasers, and that as a result of this sale the defendant is not obligated for any loss by fire to the building.

For its third defense, the insurance company alleges that the policy provided there would be no liability for a

loss occurring while the hazard is increased by any means within the control or knowledge of the plaintiffs. Plaintiffs maintained the building in such a state and condition as to constitute an increase in hazard and there is no liability under the policy.

The jury was waived and the case was tried to Judge McMonagle who rendered a judgment for the plaintiffs in the amount of $8,373 plus interest from March 17, 1971.

In addition, Judge McMonagle prepared a memorandum to counsel which recited substantially the facts stated above. He also noted that a claim was presented to the insurance company with an estimate in the amount of $10,610.50, and that the estimate was prepared by John B. Wright, a general contractor, who reviewed the damage and the estimate on the scene in company of Mr. Kelly, the agent of the defendant.

Judge McMonagle stated that the plaintiffs were the owners on the date of the fire; and that the plaintiffs had purchased a policy of fire insurance from the defendant; and that it was valid and binding upon the parties. Any agreement by the plaintiffs and a third party for the sale of the property is not to be considered as altering the terms of the contract between the defendant and the plaintiffs.

The trial court found that the plaintiffs did have an insurable interest; and that after hearing all of the evidence regarding the replacement cost and losses and making due allowance of depreciation, depletion, added costs, and deterioration of the neighborhood the court found for the plaintiffs against the defendant in the amount of $8,373 and entered judgment accordingly.

The defendant has taken this appeal and has three assignments of error as follows:

I. The Trial Court erred in holding that the sellers of a building had an insurable interest and could recover under their insurance policy for a fire loss to the building when the sales contract, entered into prior to the loss, required the purchasers to demolish the building.

II. The Trial Court erred in admitting the hearsay testimony of plaintiffs-appellees' repairman which testimony was based solely on an unidentified publication.

III. The amount of the judgment was excessive.

In addition to its assignments of error and brief the defendant appellant has submitted a transcript of the proceedings, which contains the testimony of three witnesses: plaintiffs' witness, John B. Wright, a contractor who prepared a resume or an estimate of loss; the plaintiff John C. Westfall; and Thomas G. Kelly, called by the plaintiff. Mr. Kelly is a former employee of American States Insurance Company and was the adjuster of plaintiffs' claim.

Attached to the transcript of the proceedings were three exhibits: plaintiffs' exhibit 1, The Policy of Fire Insurance; plaintiffs' exhibit 2, The Purchase Agreement; and plaintiffs' exhibit 8, Mr. Wright's estimate of fire loss, containing 21 items totalling $10,610.50.

The substance of Mr. Wright's testimony is that he is a general contractor with over 20 years of experience and that he has adjusted 60 to 75 fire losses. He prepared an estimate of loss totalling $10,610.50 and presented it to the American States Insurance Company. He used a little magazine or data book, which is used in the industry and contains costs for labor and material in the preparation of the estimate. His testimony was a review of his written report item by item. He was examined by the plaintiffs' lawyer and was cross-examined by defendant's lawyer.

Plaintiffs' next witness was John C. Westfall, the owner of the property, who did not add any material or relevant evidence. He was not cross-examined.

Plaintiffs' third witness was Thomas G. Kelly, who was the adjuster for the American States Insurance Company and who worked on this fire loss for the company. He made an adjuster's loss report on May 12, 1971 which is not a part of the transcript of proceedings. He reviewed Mr. Wright's estimate and visited the property with Mr. Wright and inspected the damage. He also took polaroid pictures which are not in the record. He testified that Mr. Wright's estimate was too high and should have been $7,500 to $8,000; that the replacement value was $6,000; and that taking into consideration depreciation, he would have adjusted this fire loss for $4,800. He did admit that he did not make an estimate of his own but only had Mr. Wright's estimate,

nor did he get a competitive estimate because of the purchase agreement to sell the property (R. 122).

I agree with the majority opinion that the second and third assignments of error are not well taken. However, I disagree with the decision regarding the first assignment of error.

In this case we are dealing with an interpretation of a contract entered into by and between two parties: namely, the insurer and the insured. It is undisputed that the contract of insurance was entered into by and between the plaintiffs and the defendant; and that a fire occurred at the time the plaintiffs still had legal title to the premises. The majority held that by the plaintiffs entering into a contract for the sale of their property with a provision for the demolition of the buildings by the purchaser their fire insurance policy was cancelled as a matter of law.

We are dealing with contract law and must interpret the terms of a contract that are clear and unambiguous.

It is undisputed that in order to recover on a fire insurance policy a party must have an insurable interest, *Insurance Co.* v. *Coal Co.* (1903), 68 Ohio St. 469, 484.

It is also well established that a policy or contract of insurance is to be liberally construed in favor of the insured and strictly against the insurer because it is the insurer who drafted the agreement. See, *Allstate Ins. Co.* v. *Boggs* (1971), 27 Ohio St. 2d 216; *Ohio Farmers Ins. Co.* v. *Wright* (1969), 17 Ohio St. 2d 73.

If the insurance company intended to cancel the insurance policy and eliminate the insured's insurable interest, it could have written the policy to provide that when a contract is entered into, providing that a building would be demolished by the buyer, the policy of insurance is cancelled immediately upon the execution of such contract.

It is wrong for this court to say that execution of an executory contract for the sale of property, which provides for the demolition of the building on the property, by the buyer, as a matter of law, automatically cancels a contract of insurance on the property.

The contract of insurance was by and between the

plaintiff and the defendant and the contract for the sale of the property was by and between the plaintiffs and the Cains.

There was no language contained in either contract providing that the contract of insurance would be cancelled immediately upon the execution of the contract of sale. The trial court correctly decided that the contract for the sale of the property could not be used to alter the insurance contract.

In order to hold that the plaintiff did not have an insurable interest it is necessary to decide that as a matter of law, the contract of insurance is cancelled immediately upon execution of a contract for the sale of property which provides that any building on the property will be demolished by the purchaser. This is not a valid legal conclusion.

In this type of case there are two issues that must be decided. The first is whether the insured had an insurable interest, and thus the insurer would be liable under the terms of the policy; and, secondly, if there is liability, the amount of loss. The amount to be paid under the terms of this policy is the cash value at the time of loss, but not to exceed the amount it would cost to repair or replace the property.

Clearly, the seller had an insurable interest. The insurance policy was issued and, in effect, premiums were paid; the plaintiff owned the property; title had not been transferred and demolition had not started at the time of the fire.

There was no evidence introduced by either plaintiffs or defendant of the cash value at the time of loss. However, plaintiffs introduced evidence that the costs of repair would be $10,610.50, as stated above.

Defendant relied principally on its legal argument that the execution of the contract for the sale of property containing a provision for the demolition of the buildings in effect cancelled the contract of insurance and extinguished the insured's insurable interest.

Defendant's secondary argument was that the cost of repair was less than the $10,610.50 testified to by plaintiffs'

witness, Mr. Wright. Defendant attempted to do this by cross-examination of plaintiffs' witnesses. Further, defendant did not introduce any evidence of the cash value of the rear house at the time of the fire. It did not try to minimize its obligation under the policy by showing the cash value of the rear house at the time of the fire.

The cases cited by the majority can be distinguished from the present case, in that in the instant case we are involved with an executory contract for the sale of property in which title had not yet been transferred, nor had demolition begun at the time of the fire. See, *Garcy Corp.* v. *The Home Ins. Co.* (1973), 353 F. Supp. 320; *Aetna State Bank* v. *Maryland Cas. Co.* (1972), 345 F. Supp. 903; *Lieberman* v. *Hartford Fire Ins. Co.* (Ill App. 1972), 287 N. E. 2d 38.

Further, *Leggio* v. *Millers Nat'l Ins. Co.* (Tex Civ. App. 1965), 398 S. W. 2d 607, is distinguishable from the instant case in that it involved a lessee having an option to demolish and replace an existing building. The court stated that if the option had been effectively exercised by the lessee and accepted by the lessor before the fire, the lessor would not have an insurable interest. The exercising of this option by the lessee would give him such rights in the building that the insured lessor would have no insurable interest. This is similar to a seller losing his insurable interest after transfer of title. But, the court held that the lessee had not exercised his option and the lessor did have an insurable interest.

In *Royal Insurance Co.* v. *Sisters of Presentation* (9th Cir., 1970), 430 F. 2d 759 the Sisters had already received new land and a new building in exchange for the old building which was to be demolished. Under the facts and law, the sisters would have had no right to reinhabit the old building in which the utilities were disconnected, fixtures, doors and windows were removed, and the property turned over to the demolition contractor.

For the foregoing reasons I would affirm the judgment of the trial court.