BELL et al., Appellants,

v.

TURNER et al., Appellees.

[Cite as Bell v. Turner, 172 Ohio App.3d 238, 2007-Ohio-3054.]

Court of Appeals of Ohio,
Fourth District, Highland County.

No. 06CA23.

Decided June 13, 2007.

---

Hapner & Hapner and Jon C. Hapner, for appellants.

Rose & Dobyns Co., L.P.A., and John S. Porter, for appellee Stella Turner.

Peele Law Offices Co., L.P.A., C. Todd Cook, and William E. Peele, for appellee Leesburg Federal Savings and Loan.

Per Curiam.

{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment that overruled a motion for new trial filed by Rodney Bell and Shirley Diane Bell, plaintiffs below and appellants herein, after the court entered judgment against them on their claims against William A. Turner and Stella Turner, defendants below and appellees herein.[1]

{¶ 2} Appellants assign the following errors for review and determination:

First Assignment of Error:

---

1. The facts set forth herein are taken from our earlier opinion. See *Bell v. Turner*, Highland App. No. 05CA10, 2006-Ohio-704, 2006 WL 367896.

The trial court erred in failing to apply the doctrine of merger to the contract.

Second Assignment of Error:

The trial court erred in finding that the Turners did all they could do to obtain the authority to place two trailers per lot.

Third Assignment of Error:

The trial court erred in that defendants were not restoring plaintiff to status quo in allowing rescission of the contract.

Fourth Assignment of Error:

The trial court erred in finding that there was no acceptance of the deeds, that the transaction was in escrow, and the transaction was never closed.

Fifth Assignment of Error:

The trial court erred in finding in favor of the defendant Quance.

{¶ 3} In May 1995, appellees contacted Richard and Harriett Fout, d.b.a. Fout Realty, to inquire about purchasing land on which to place 11 mobile homes.[2] The Fouts directed them to appellants, who had six lots for sale in Madison Township. Appellants showed appellees certain property, and after appellants assured them that two mobile homes could be placed on each lot, appellees agreed to purchase six lots for $65,000.[3] Under a portion of the contract denoted as "reservations," the parties specified that their agreement was "subject to putting 2 mobile homes on each lot."

{¶ 4} At the June 9, 1995 closing, appellants executed the deeds,[4] and appellees executed notes and mortgages to appellants and to Leesburg Federal Savings and Loan Association ("Leesburg"), defendant below and appellee herein, for $8,000 and $52,000 respectively. These monies were not immediately disbursed, and the instruments were not immediately recorded. Instead, the parties agreed that everything would be held in escrow for a period of time.

---

2. Appellees sold a campground in Waynesville, Ohio, and had promised to move those homes by June 15.

3. The actual purchase price for the lots was $50,000. Appellees also agreed to pay appellants $15,000 to prepare the lots for placement of their mobile homes.

4. The lots were not conveyed in their entirety to appellees. Rather, at their request, the lots were put in their names, as well as the names of their children (Metrisha Hughes, Linda Lee Johnson, and Peggy Sue Shoenbarger, defendants below and appellees herein), so that no single person or persons owned contiguous lots. Two explanations were offered at trial as to why the transaction was structured in this manner. First, appellee Stella Turner explained that her husband had Alzheimer's disease and they wanted to transfer as many assets as possible to their children for estate-planning purposes. Another explanation was that appellees set up the purchase in this manner to circumvent the definition of "trailer park" under Ohio law, which includes two or more contiguous lots owned by the same person.

{¶ 5} No written agreement specified the terms and conditions of the escrow. During the trial court proceeding, three different explanations were offered. Appellee Stella Turner believed that everything was escrowed until she obtained permits to place two mobile homes on each lot. Peter Quance, defendant below and an appellee herein, was the attorney who closed the transaction. He could not recall any conditions for the escrow—only that some of the instruments were sent out of state for a daughter to execute and that this activity would take some time. Appellant Rodney Bell believed that this was the reason for escrow and that once the executed instruments were returned and recorded, he and his wife would receive the money.

{¶ 6} The instruments were recorded on June 29, 1995. Checks were later drawn on the escrowed funds to pay the realtor's commission and to pay appellants the deposit on the property.[5] No further monies were disbursed to appellants, and they received no money on the purchase-money mortgage they held.[6] Appellees then attempted to obtain permits to place two mobile homes on each of the lots. The Madison Township trustees determined, however, that two mobile homes on each lot would violate the zoning regulations. Appellees attempted to appeal that determination or to obtain a variance, but to no avail. In a separate action, the Madison Township trustees obtained an injunction to prevent the mobile homes from being placed on the property.

{¶ 7} Appellants commenced the instant action and alleged that appellees William and Stella Turner, and their daughters, owed the remainder of the sales price due on the properties and that appellee Leesburg owed them the remaining money on the transaction held in escrow. Appellants demanded $49,901 plus interest against the grantees, jointly and severally, and against Leesburg for the disbursement of the remaining money.[7]

{¶ 8} Appellees William and Stella Turner, and their daughters, denied liability. They also counterclaimed and alleged that the parties operated under a mutual mistake of fact (i.e., that two mobile homes could be placed on each of the six lots). Appellees further asserted that they had stored their mobile homes on other property that appellants owned, while the six lots were made ready to

---

5. The sales contract specified that a $5,000 deposit must be held in escrow until the deeds were delivered. Peter Quance testified that in his opinion, the condition had been satisfied, and appellant was entitled to the deposit.

6. Peter Quance held the escrowed funds in his trust account and later transferred the funds to a special account at Leesburg.

7. Though Peter Quance was named a defendant in the original complaint, appellants did not seek judgment against him in their prayer for relief. An amended complaint alleged that he had perpetrated fraud against appellants, and it sought damages totaling more than $149,000.

receive them, and that the mobile homes had sustained damage. Appellees requested a rescission of the sales contract, reimbursement of money they spend attempting to obtain a zoning change for the premises, and $100,000 in damages to compensate them for losses to the mobile homes. Appellants denied liability.

{¶ 9} Appellee Leesburg also denied liability and cross-claimed against appellees William and Stella Turner and alleged that they had not paid their obligations under the mortgage executed in favor of the savings and loan association. Leesburg demanded judgment for the balance due under the note as well as foreclosure of its security interest. Appellees William and Stella Turner denied any liability to Leesburg.

{¶ 10} On May 19, 1998, Harriett Fout, d.b.a. Fout Realty, was joined as a party defendant to the case. Appellees William and Stella Turner thereafter filed a third-party complaint and alleged that the commission paid to Fout was improper because a contingency on the sale was not satisfied. They demanded $6,500 plus interest for the return of the commission. Harriett Fout denied liability.

{¶ 11} During the next six years, the parties filed various motions, including motions for summary judgment and to bifurcate the trial.[8] At the December 2004 bench trial, the parties testified regarding their understanding of the sales contract, the escrow agreement, and the reasons that appellees could not obtain permission to place the mobile homes on the lots.[9]

{¶ 12} On January 11, 2005, the trial court issued its judgment in appellees' favor. The court reasoned that the ability to place two mobile homes on each lot was a specific condition of the purchase agreement, and although terms of a sales contract usually merge into a deed and extinguish any cause of action on the contract once the sale is consummated, no merger occurred here because (1) the contingency concerning placement of two mobile homes per lot was collateral and did not merge into the deeds and (2) no delivery or acceptance of the deeds occurred. In the end, the court concluded that appellees are entitled to rescission based upon the mutual mistake that two mobile homes could be placed on each lot. Consequently, the trial court ordered appellees to convey the properties to appellants and ordered Leesburg to execute and record a cancellation of its mortgage on the premises. The court did, however, find in appellants' favor

---

8. During this time, appellee William A. Turner died. On November 30, 2004, the court appointed his wife, Stella Turner, executor of his estate and substituted her in his place as a party defendant.

9. Before trial, the parties agreed that the proceedings would involve only claims and counterclaims between appellants and appellees. Any claims concerning Leesburg and Peter Quance would be resolved at another time.

on the issue of the damaged mobile homes and determined that appellees were not entitled to any damages. Finally, the court ordered each party to file a position statement to outline the remaining issues that must be resolved.

{¶ 13} On January 21, 2005, appellants filed a motion for new trial and argued that the judgment was not supported by the weight of the evidence and that the judgment is contrary to law. Appellants asserted that the trial court erred in accepting appellees' version of the terms of the escrow arrangement and in its determination that the sales contract terms had not merged into the deed. The trial court denied the motion for new trial and ruled on a variety of other issues, including a determination that it would not disturb the $6,500 payment of the real estate commission. Appellants appealed that judgment, but we dismissed it for lack of jurisdiction because the trial court had not resolved appellees' request for reimbursement of fees and expenses. See *Bell v. Turner*, Highland App. No. 05CA10, 2006-Ohio-704, 2006 WL 367896, at ¶ 20. On May 19, 2006, the trial court entered judgment on that claim and found against appellees. This appeal followed.

## I

 {¶ 14} Appellants appeal the trial court's denial of their motion for a new trial. Civ.R. 59(A)(6) and (7) provides that a trial court "may" grant a new trial if the judgment is not sustained by the weight of the evidence or is contrary to law. The use of the word "may" within the rule implies that it is in the trial court's discretion to order a new trial. The case law reflects the discretionary nature of the trial court's decision. See e.g., *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, 52 O.O.2d 376, 262 N.E.2d 685; *Krejci v. Halak* (1986), 34 Ohio App.3d 1, 516 N.E.2d 235. Therefore, an appellate court may reverse an order of a trial court that denies a new trial under Civ.R. 59(A)(6) or (7) only upon a showing of an abuse of discretion by the trial court. See *Rohde*, supra, at paragraph one of the syllabus; *Krejci*, supra, 34 Ohio App.3d at 3, 516 N.E.2d 235. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

## II

 {¶ 15} We jointly consider appellant's first and fourth assignments of error because they raise similar issues. Appellees seek rescission of the sales transaction because a contingency in their contract (the number of mobile homes that could be placed on each lot) was not satisfied. Appellants contend that it is too late to seek rescission on that basis because the terms of the contract merged into the deeds executed at the closing and then later recorded. The trial court

concluded, however, that the merger doctrine did not apply because (1) the contingency regarding the number of mobile homes was collateral to the agreement and (2) the grantees did not accept the deeds. Appellants contend that the court erred in its decision on both issues. We disagree.

{¶ 16} When a deed is delivered and accepted without qualification pursuant to an agreement, no cause of action upon the prior agreement exists thereafter. *Fuller v. Drenberg* (1965), 3 Ohio St.2d 109, 32 O.O.2d 91, 209 N.E.2d 417, paragraph one of the syllabus. In fact, the purchase contract merges into the deed. *37 Robinwood Assoc. v. Health Industries, Inc.* (1988), 47 Ohio App.3d 156, 157–158, 547 N.E.2d 1019. One exception to the doctrine of merger by deed is when "a mistake resulted." *Richter v. Moreland,* Warren App. No. CA2005–03–031, 2006-Ohio-2946, 2006 WL 1586648, ¶ 13 citing *Seaman v. Altus Metals, Inc.* (Mar. 24, 2000), Adams App. No. 99CA683, 2000 WL 331596.

{¶ 17} Based on the above authority, no delivery means no acceptance and no merger of the purchase contract into the deed. Here, the trial court held that appellees did not accept the deeds because the condition set forth in the oral escrow agreement regarding permits was not satisfied. Thus, the purchase agreement did not merge into the deed.

{¶ 18} The Ohio Supreme Court defines an escrow as " '[a] written instrument which by its terms imports a legal obligation, and which is deposited by the grantor * * * or his agent, with a stranger or third party, to be kept by the depositary until the performance of a condition or the happening of a certain event, *and then to be delivered over to the grantee.*' " (Emphasis added.) *Squire v. Branciforti* (1936), 131 Ohio St. 344, 353, 6 O.O. 59, 2 N.E.2d 878, quoting 10 Ruling Case Law 621. Although *Squire* defined an escrow as a writing, other courts have since stated that an escrow is *"usually* evidenced by a writing." (Emphasis added.) *Janca v. First Fed. S. & L. Assn. of Cleveland* (1985), 21 Ohio App.3d 211, 213, 21 OBR 225, 486 N.E.2d 1216. The "grantee [in a real estate transaction] * * * may [also] impose conditions in the escrow instrument or agreement that have the same binding effect upon the escrow agent as those of the grantor * * *." *Squire,* 131 Ohio St. at 354, 6 O.O. 59, 2 N.E.2d 878, citing *Cincinnati, Wilmington & Zanesville RR. Co. v. Iliff* (1862), 13 Ohio St. 235. When a conflict exists between a real estate purchase agreement and an escrow agreement, the escrow agreement governs. *Janca,* 21 Ohio App.3d at 213, 21 OBR 225, 486 N.E.2d 1216.

{¶ 19} We have held that "[d]elivery of a deed to the recorder for recording is prima facie evidence of delivery to the grantee." *Alaska Seaboard Partners v. Godwin* (Sept. 26, 2002), Hocking App. No. 02CA5, 2002-Ohio-5346, 2002 WL 31194336, ¶ 14. Here the deeds were recorded, an action that provides some

evidence that the deeds were delivered. Other evidence offered by the appellees rebuts that evidence, however, and supports the finding of the trial court. Ms. Turner testified that the parties entered into an escrow agreement whereby the deeds were not to be transferred to appellees from the escrow until zoning permits were issued. Mr. Quance and Leesburg refute Ms. Turner's testimony and contend that no zoning-permit condition existed regarding the disbursement of the title documents.

{¶ 20} "[J]udgments supported by some competent and credible evidence should not be reversed on appeal as being against the manifest weight of the evidence." *Loop v. Hall*, Scioto App. No. 05CA3041, 2006-Ohio-4363, 2006 WL 2441941, ¶ 10, citing *Shemo v. Mayfield Hts.* (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018; and *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, at the syllabus. Further, it is well settled that "triers of fact resolve questions concerning the weight of the evidence and witness credibility." Id. at ¶ 11, citing *Cole v. Complete Auto Transit, Inc.* (1997), 119 Ohio App.3d 771, 777–778, 696 N.E.2d 289; and *Jacobs v. Jacobs*, Scioto App. No. 02CA2846, 2003-Ohio-3466, 2003 WL 21500026 at ¶ 31.

{¶ 21} "The underlying rationale for deferring to the trier of fact on these issues is that the trier of fact is best positioned to view witnesses, to observe witness demeanor, gestures and voice inflections, and to use those observations to weigh witness credibility." Id. at ¶ 11, citing *Myers v. Garson* (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; and *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. "Thus, a trier of fact may believe all, part or none of the testimony of any witness who appears before it." Id. at ¶ 11, citing *Rogers v. Hill* (1998), 124 Ohio App.3d 468, 470, 706 N.E.2d 438; and *Stewart v. B.F. Goodrich Co.* (1993), 89 Ohio App.3d 35, 42, 623 N.E.2d 591.

{¶ 22} Therefore, because some competent, credible evidence exists upon which the trial court could determine that delivery of the deeds in escrow was conditioned on the issuances of zoning permits, we uphold the trial court's factual findings. See *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, at syllabus. Consequently, because the condition of the escrow agreement regarding appellees' obtaining the necessary zoning permits was not satisfied, the deeds were not delivered to appellees, and thus not accepted. Consequently, the purchase contract did not merge with the deeds.

{¶ 23} For these reasons, we overrule appellants' first and fourth assignments of error.

### III

{¶ 24} Appellants argue in their second assignment of error that the trial court erred in its determination that appellees did all they could to obtain authority to place mobile homes on the lot. We reject this argument.

{¶ 25} First, appellees testified concerning the steps they took to obtain the zoning permits. Thus, some competent and credible evidence supports the trial court's conclusion on this issue. *C.E. Morris Co.*, supra.

{¶ 26} Second, the trial court made this observation in regard to its award of rescission as a remedy. The underlying premise of appellants' argument is that appellees were required to exhaust all avenues of relief before seeking rescission of the contract. We disagree.

{¶ 27} Although it originates in equity rather than law, rescission is as much a remedy for a breach of contract as is compensatory damages. A party need not exhaust all avenues around a breach before filing suit for damages, and that is true here. Further, the First District Court of Appeals rejected this argument in *Drive–In Assoc., Inc. v. Halpin* (Dec. 21, 1977), Hamilton App. No. C–76712, 1977 WL 199804, holding that a real estate vendee is not required to exhaust all possible means of obtaining zoning changes before suing for rescission of the sales contract.

{¶ 28} For these reasons, we hereby overrule appellants' second assignment of error.

### IV

{¶ 29} Appellants argue in their third assignment of error that the trial court erred in ordering rescission because that order did not restore the parties to their prior position. We agree.

{¶ 30} The primary purpose of rescission is to restore the status quo and to return the parties to the position they would have been in had the contract not been formed. *Rosepark Properties, Ltd. v. Buess,* 167 Ohio App.3d 366, 2006-Ohio-3109, 855 N.E.2d 140, ¶ 51. Here, it does not appear that the trial court took into consideration either the outstanding real estate taxes or the pending foreclosure when it fashioned the remedy of rescission.

{¶ 31} The third assignment of error is therefore sustained. This issue is hereby remanded to the trial court for consideration of whether rescission is even a proper remedy in this case and, if so, what steps are required to put the parties back in their precontract position.

V

{¶ 32} Appellants' fifth assignment of error concerns the disposition of their claim against Peter Quance. The October 1, 1996 amended complaint alleged that Quance held in excess of $49,000 to be paid to them from settlement proceeds. They further alleged that he defrauded them by paying that money to Leesburg. Moreover, before trial in 2004, the parties agreed to bifurcate the proceedings and to go forward on the claim against Quance at a later date.

{¶ 33} Nevertheless, in its January 11, 2005 judgment, the trial court declared, "Quance served as an escrow agent for the closing." Then, in its June 23, 2005 judgment on the "remaining issues," the court ruled, "Leesburg Federal Savings and Loan Association was the settlement agent for [the] closing" and ultimately ruled in favor of Quance on appellants' claims against him.

{¶ 34} We are not sure about the status of this claim, and we believe that the interests of justice are best served by remanding it for further proceedings. First, if the parties agreed to proceed against Quance at a later date, then it is improper to simply enter judgment against them on the issue without those proceedings. Second, the trial court's treatment of Quance in its January 2005 entry is inconsistent with its treatment of Quance in the June 2005 entry. For these reasons, the fifth assignment of error is sustained.

VI

{¶ 35} In conclusion, we hold that the trial court did not abuse its discretion in denying the motion for a new trial on the basis of appellants' contentions in assignments of error one, two, and four. However, we hold that the trial court did abuse its discretion in denying the motion for a new trial for the reasons we outlined in assignments of error three and five. We affirm in part and reverse in part the judgment of the trial court. We remand this cause to the trial court for further proceedings consistent with this opinion.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

KLINE, J., concurs.

HARSHA, J., concurs in judgment only.

ABELE, J., dissents.