[Cite as *Bell v. Turner*, 2013-Ohio-1323.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| RODNEY BELL, et al., | : | Case Nos. 12CA14 |
| | : | 12CA15 |
| Plaintiffs-Appellants, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| WILLIAM A. TURNER, et al., | : | |
| | : | |
| Defendants-Appellees, | : | |
| | : | |
| and | : | |
| | : | |
| HARRIET FOUT, dba Fout Realty, | : | **RELEASED 03/25/13** |
| | : | |
| Third-Party Defendant-Appellant. | : | |

_____
APPEARANCES:

Jon C. Hapner, Hapner & Hapner, Hillsboro, Ohio, for Plaintiff-Appellant Rodney Bell.

Conrad A. Curren, Esq., Greenfield, Ohio, for Third-Party Defendant-Appellant Harriet Fout, dba Fout Realty.

John S. Porter, Rose & Dobyns Co., L.P.A., Blanchester, Ohio, for Defendant-Appellee Stella Turner.

_____
Harsha, J.

**{¶1}** Rodney Bell and Shirley Bell (the "Bells") initiated this lawsuit in January 1996, and this is the fifth appeal since 2005. The Bells appeal from the trial court's July 24, 2012 judgment entry rescinding the land contract between them and William and Stella Turner (the "Turners") and rejecting the Bells' claims against Peter Quance, the attorney who closed the transaction.[1]

---

[1] The record indicates that of the Bells, only Rodney Bell appealed. Also, William Turner is deceased and Stella Turner was substituted as a defendant as the administrator of his estate. Nonetheless, we refer to these parties as the Bells and the Turners for expediency. In addition, defendants below Leesburg

**{¶2}**    The Bells argue that the court erred when it fashioned the rescission order because it instructed them to pay the real estate taxes, interest, and penalties that accrued on the properties from the date the Bells and Turners entered into the land contract.  The Bells contend that the Turners should pay the entire tax liability for numerous reasons we find unpersuasive.  Nonetheless, we conclude the trial court abused its discretion because its decision to order the Bells to bear sole responsibility for the tax liability is unreasonable.  The land contract was rescinded due to a mutual mistake.  There is no evidence that the Bells or Turners profited from the land in any way during these proceedings.  And it is clear that the inaction of both the Bells and Turners contributed to the tax liability, which escalated as this case has dragged on year after year.  Therefore, we modify the court's order as detailed below to make the Bells and Turners each responsible for one-half of the real estate taxes, interest, and penalties that accrued from July 9, 1995, until July 24, 2012.  Any tax liability that accrued before June 9, 1995, and after July 24, 2012, is the Bells' responsibility.

**{¶3}**    Finally, the Bells claim the court erred when it ruled in Quance's favor on their claim that he was an escrow agent and wrongfully refused to give them escrowed funds to pay the balance due on the land contract.  However, the record contains evidence from which the court could conclude that under the terms of the escrow agreement, the Bells were not to be paid until the Turners received certain zoning permits.  Because that condition was not satisfied, Quance could not give the Bells the escrowed funds.  To the extent the Bells suggest Quance improperly returned the funds to the lender involved in the transaction, they fail to explain how they were harmed by

---

Federal Savings & Loan Association and Peter Quance have not filed an appearance or otherwise participated in this appeal.

this transfer, especially in light of the fact that the land contract has been rescinded.

{¶4}    Harriet Fout, dba Fout Realty, also appeals the court's judgment, which ordered her to disgorge her sales commission from the transaction plus statutory interest.[2]  Fout complains that the judgment is not a final order because the court failed to state whether it characterized her commission as "closing costs."  We fail to see the necessity of this for purposes of finality in this case.

{¶5}    Next, Fout claims the doctrine of res judicata precludes the court from ordering her to return the commission.  We agree.  The court previously issued a final order in Fout's favor, and no one appealed that ruling.  Therefore, it was error for the court to alter its prior decision.  Accordingly, based on res judicata we modify the July 2012 judgment to state that Fout cannot be ordered to return her commission with interest.  The court instructed the clerk of court to give the Turners $1,964.08 out of the money the court ordered Fout to pay.  Because our modification makes that impossible, we also modify the court's decision to state that the Turners are not entitled to the $1,964.08.  Our decision renders moot Fout's additional claims.

I. Facts

{¶6}    This litigation is the product of a failed real estate transaction in which the Bells sold six parcels to the Turners.  Because this case has been before us on multiple occasions, we have recounted the facts in previous opinions.  *Bell v. Turner*, 4th Dist. No. 05CA10, 2006-Ohio-704, ¶ 2-14 ("*Bell I*"); *Bell v. Turner*, 172 Ohio App.3d 238, 2007-Ohio-3054, 874 N.E.2d 820, ¶ 3-13 (4th Dist.) ("*Bell II*"); *Bell v. Turner*, 191 Ohio App.3d 49, 2010-Ohio-4506, 944 N.E.2d 1179, ¶ 2-5 (4th Dist.) ("*Bell III*"); *Bell v. Turner*, 4th Dist. Nos. 10CA18 & 10CA19, 2012-Ohio-669, ¶ 2-5 ("*Bell IV*").

---

[2] These appeals were consolidated for purposes of decision.

{¶7}    We dismissed *Bell I* for lack of a final order because the court had not resolved a request for reimbursement of fees and expenses.  After the court entered judgment on that claim, we addressed the merits of the court's final judgment in *Bell II* and affirmed it in part and reversed it in part.  We remanded for further proceedings on the claims against Quance and for consideration of whether rescission of the real estate contract was "even a proper remedy in this case and, if so, what steps are required to put the parties back in their precontract position."  *Bell II* at ¶ 31, 34.  Post-remand, the trial court issued entries the Bells and Fout appealed in *Bell III* and *Bell IV*.  We dismissed those appeals for lack of a final order.

{¶8}    Following *Bell IV*, the trial court issued an entry on July 24, 2012, finding rescission was an appropriate remedy and that:  (1) the Turners (and their children) had to execute deeds to transfer the parcels back to the Bells; (2) the Bells were responsible for payment of "all real estate taxes, interest, and penalties" that accrued against the six parcels "since March 12, 1996, the date of the original contract entered into by Plaintiffs and Defendant Turner"; (3) Fout had to disgorge the $6,500.00 real estate commission she received from the sale and pay it plus statutory interest from March 12, 1996, to the clerk of court; (4) the Turners were awarded a refund of all closing costs they paid on June 9, 1995, plus statutory interest from March 12, 1996, forward; (5) upon receipt of Fout's payment, the clerk shall issue a check to Stella Turner "in an amount of $1964.08 equal to the amount awarded" for closing costs and interest; (6) the remainder of Fout's payment shall be paid to the Highland County Treasurer and applied towards the unpaid real estate taxes on the six parcels on a pro rata basis; and (7) the Turners and their children were responsible for clearing all trash, debris, and junk from the property and

trimming and removing vegetative overgrowth.  The court also found in Quance's favor

on the Bells' claims against him.   Once again, an appealed followed.

## II.  Assignments of Error

**{¶9}**  The Bells assign three errors for our review:

I.      The [t]rial [c]ourt erred in its decree of rescission wherein the
        Defendant/Appellee incurred the real estate taxes and imposed the
        delinquent taxes on the Appellant.  Record Pages 19, 70, 83.

II.     The [t]rial [c]ourt erred in placing the burden of restoration upon the
        Plaintiff/Appellants since it was the Defendant/Appellee Turners
        seeking rescission.  Record Pages 19, 42, 70 to 72.

III.    The [t]rial [c]ourt erred in finding for the Defendant Quance on the
        matter of the escrow.

**{¶10}**  Fout also assigns three errors for our review[3]:

I.      The [t]rial [c]ourt erred in dismissing Peter Quance as a defendant
        from the case as Mr. Quance's actions were an integral component
        in the case.

II.     The [t]rial [c]ourt erred to the detriment of the Defendant/Appellant
        Harriet Fout as it did not have jurisdiction to address the matter of
        Appellant Fout's commission as the doctrine of *res judicata* bars all
        claims that have been previously litigated and any order relating to
        the Appellant Harriet Fout was beyond the mandate of the
        Appellate Court's remand.

III.    The trial court erred to the detriment of Defendant/Appellant Fout
        when it ordered Defendant/Appellant Fout to disgorge the
        commission paid to her, together with statutory interest, as such
        order was in violation of the Appellate Court's remand, which
        required the trial court to determine what steps are required to put
        the parties back in their pre-contract position.

        a. The trial court's latest order is still not an appealable order
           because there is no finding that the closing costs consisted only
           of the real estate commission or that the real estate commission
           was any part of the closing costs.
        b. The trial court erred to the detriment of the Defendant Harriet

---

[3] Fout actually designates these as "ISSUES" in her appellate brief and fails to specifically identify any assignments of error, but we will treat her "ISSUES" as assignments of error.

Fout in ordering interest paid on the real estate commission as
this would result in unjust enrichment of other parties.

### III. Finality of the July 24, 2012 Order

{¶11} Initially, we address Fout's claim in her third assignment of error that the court's July 24, 2012 order is not final. Appellate courts "have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district[.]" Ohio Constitution, Article IV, Section 3(B)(2). If a court's order is not final and appealable, we have no jurisdiction to review the matter and must dismiss the appeal. *Eddie v. Saunders*, 4th Dist. No. 07CA7, 2008-Ohio-4755, ¶ 11.

{¶12} Fout argues that the order is not final because "there is no finding that the closing costs consisted only of the real estate commission or that the real estate commission was any part of the closing costs." Fout does not expand on this argument, so it is unclear why the court had to make a finding about whether the commission constituted part of the closing costs to create a final order. The court ordered $1,964.08 refunded to the Turners for closing costs they paid and interest.[4] Thus, the amount the Turners are to receive under the entry is clear regardless of whether the money they paid for "closing costs" was ever used to pay any portion of the commission. Therefore, we reject Fout's argument with regard to the finality of the court's July 2012 judgment.

### IV. Fout's Commission

{¶13} Because it is dispositive of the rest of her appeal, we next address Fout's second assignment of error. Fout claims the court erred when it ordered her to return the commission plus interest. She contends the court previously issued a final

---

[4] Although none of the parties raise the issue, the court's $1,964.08 figure appears to mistakenly exclude the statutory interest the court also ordered paid to the Turners.

judgment in her favor which no one appealed, and the doctrine of res judicata bars the court from altering that judgment. She also complains that the court went beyond the scope of our remand instructions in *Bell II* when it issued the order against her.

{¶14} "The applicability of res judicata is a question of law that is subject to de novo review." *Althof v. State*, 4th Dist. No. 04CA16, 2006-Ohio-502, ¶ 13. " 'If a final appealable order is not timely appealed, all matters that could have been reviewed had an appeal been taken become res judicata and are not reviewable in a related or subsequent proceeding or appeal.' " *Parker v. Jamison*, 4th Dist. No. 02CA2857, 2003-Ohio-7295, ¶ 10, quoting *Jeffers v. Jeffers*, 10th Dist. No. 00AP-442, 2001 WL 118530, *3 (Feb. 13, 2001).

{¶15} In a third-party complaint, the Turners sought a judgment against Fout for the return of her $6,500 commission plus interest. In a June 23, 2005 entry, the court stated: "The settlement agent * * * disbursed * * * $6,500.00 on behalf of plaintiffs to their real estate agent, which disbursement was inconsistent with the 'oral escrow agreement.' This Court will not disturb that disbursement." Thus, the court ruled in Fout's favor on the third-party complaint. Although this was an interlocutory order, *see* *Bell I*, it merged into the court's final judgment we considered in *Bell II*.

{¶16} The Turners claim we reversed the ruling on the commission in *Bell II* when we remanded the action "for consideration of whether rescission is even a proper remedy in this case and, if so, what steps are required to put the parties back in their precontract position." *Bell II*, 172 Ohio App.3d 238, 2007-Ohio-3054, 874 N.E.2d 820, at ¶ 31. They interpret the word "parties" as a reference to all parties to the litigation. They misread our decision.

**{¶17}** The only parties with claims against Fout were the Turners, who did not file an appeal in *Bell II*. Even if the Bells had appellate standing to challenge the court's ruling on the Turners' third-party complaint, they did not challenge that ruling in *Bell II.* The Bells did complain that the court erred when it rescinded the real estate contract because they were not restored to the status quo. *Id.* at ¶ 2. We agreed because it appeared the court had not taken into consideration outstanding real estate taxes or a pending foreclosure when it fashioned the remedy of rescission. *Id.* at ¶ 30. Our decision had nothing to do with the court's ruling in Fout's favor on the Turners' claims; Bell never asked us to find Fout liable for return of the commission.

**{¶18}** Although our remand order could have been more clearly worded, when read in context it was an instruction for the court to consider what was required to restore the parties *to the land contract* – the Bells and Turners – to the status quo. The court lacked jurisdiction to reconsider Fout's liability after *Bell II* because we did not remand for that purpose. *See State v. Triplett*, 4th Dist. No. 11CA24, 2012-Ohio-4529, ¶ 11. And because no one timely appealed the court's final judgment in Fout's favor, res judicata bars the order instructing Fout to disgorge her commission plus interest.

**{¶19}** The Bells and Turners suggest the court could not logically rescind the land contract and let Fout keep her commission. However, they fail to explain why Fout, as a non-party to that contract, would have any duty to restore them to the status quo. She was the Bells' agent and presumably had a separate contract with them for payment of the commission. The record contains no evidence about the terms of this contract. It is possible the Bells agreed to pay Fout regardless of whether the land contract is rescinded. In addition, we disregard the Bells' claim that Fout was overpaid

and the commission should have been $5,000.00 because they did not sue Fout on this or any other basis.

{¶20}  In the interest of judicial economy, rather than remand this matter to the trial court for further proceedings we now modify the court's July 24, 2012 judgment to state that the court previously ruled in Fout's favor, and she cannot be ordered to return her commission with interest.  *See* App.R. 12(B) (authorizing appellate courts to modify judgments they are reviewing rather than simply remanding them).  *See also* Ohio Constitution, Article IV, Section 3(B)(2).  Under App.R. 12(B) we have the authority to render the judgment the trial court should have entered.  *Superior Metal Prods. Inc. v. Admr., OBES*, 41 Ohio St.2d 143, 145, 324 N.E.2d 179 (1975).  Because of this modification, the Turners cannot be reimbursed $1,964.08 with Fout's money as the trial court ordered.  Accordingly, we also modify the court's order to state that the Turners are not entitled to this amount.  We affirm the portions of the court's judgment as modified.  Our decision renders moot Fout's first assignment of error and the remainder of her third assignment of error.  *See* App.R. 12(A)(1)(c).

## V.  Rescission

{¶21}  In their first and second assignments of error, the Bells challenge the propriety of the court's rescission order.  They complain the court erred for various reasons when it ordered them to pay the real estate taxes, interest, and penalties on the six parcels.  Because the assigned errors involve similar issues and the arguments in them overlap to some extent, we address them together.

{¶22}  "In Ohio, 'the doctrine of mutual mistake [is] a ground for the rescission of a contract under certain circumstances.' "  *Bell III*, 191 Ohio App.3d 49, 2010-Ohio-

4506, 944 N.E.2d 1179, at ¶ 12, quoting *Reilley v. Richards*, 69 Ohio St.3d 352, 352, 632 N.E.2d 507 (1994).  " '[R]escission is not merely a termination of the contract; it is an annulment of the contract.  The primary purpose of "rescission" is to restore the parties to their original positions as if the contract had never been formed.  Returning the parties to status quo is an integral part of rescission, and in doing so it is generally necessary to award the party seeking rescission at least his out-of-pocket expenses.' " *Bell III* at ¶ 13, quoting *Mid-America Acceptance Co. v. Lightle*, 63 Ohio App.3d 590, 599, 579 N.E.2d 721 (10th Dist.1989).

{¶23}  The Bells contend that the Turners had the burden to restore the status quo because the Turners requested rescission.  The Bells argue that by ordering them to pay the tax liability, the court improperly imposed the burden on them.  However, when rescission is ordered, restoration of the status quo is not a burden imposed on one party to the transaction.  Instead, "[t]he trial court has discretion in fashioning a decree that will return the parties to the position they occupied before they entered into the contract."  *Bell III* at ¶ 14.  We review the court's decree for an abuse of discretion.  *See id.*  The phrase "abuse of discretion" connotes an attitude on the part of the court that is unreasonable, unconscionable, or arbitrary.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).  When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court.  *In re Jane Doe 1*, 57 Ohio St.3d 135, 138, 566 N.E.2d 1181 (1991).

{¶24}  Here, the trial court made no findings in the July 2012 decision about why it ordered the Bells to pay the entire tax liability as part of the rescission order.  None of the parties requested findings of fact and conclusions of law.  And "[i]n the absence of

findings of fact and conclusions of law, we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment." *McCarty v. Hayner*, 4th Dist. No. 08CA8, 2009-Ohio-4540, ¶ 21, fn. 1.

**{¶25}** The Bells complain that the Turners never tendered the deeds to them until May 2005 "at the very earliest." (Bells' Appellants' Br. 16). In *Miller v. Bieghler*, 123 Ohio St. 227, 174 N.E. 774 (1931), syllabus, the Supreme Court of Ohio stated:

> It is a general rule of equity in cancellation and rescission, subject to few exceptions, that a party seeking to rescind a contract or other instrument, on the ground of mistake or for any other reason, must first place the other in statu[s] quo by returning all money, property, or other benefits received by him under the contract which is sought to be rescinded, or by making a tender thereof to the other party; and a petition in equity for rescission and cancellation of a deed which does not offer to tender a reconveyance of the title or to return any property consideration which plaintiff has received thereby, or otherwise place defendants in statu[s] quo, or aver facts which sufficiently excuse plaintiff from such duty, is subject to demurrer.

Thus, if a party seeks rescission but does not return the benefits received under the contract or make an offer in his complaint to tender those benefits, his complaint is "subject to demurrer." Although Civ.R. 7(C) abolished the demurrer in civil cases, "the Civ.R. 12(B)(6) defense, 'failure to state a claim upon which relief can be granted,' * * * supersedes the common-law demurrer as a vehicle for challenging a pleading which is defective on its face." *Mills v. Whitehouse Trucking Co.*, 40 Ohio St.2d 55, 59, 320 N.E.2d 668 (1974).

**{¶26}** However, the Bells did not assign as error the court's failure to dismiss the Turners' counterclaim for failure to state a claim upon which relief can be granted because of a lack of tender. Instead, they focus on the tax liability. The Bells want us to order the Turners to pay the entire amount as part of the rescission order and evidently believe that tender is a factor to consider in resolving who should pay. But

because tender relates to dismissal, which the Bells do not seek, their argument is misplaced and we reject it.

**{¶27}** The Bells also contend that the Turners should be responsible for the tax liability because they did not seek rescission within a reasonable time. The Bells complain that the Turners "waited 4 months before raising the issue." (Bells' Appellants' Br. 12). However, the Bells do not explain what event the Turners waited four months after and why that amount of time is unreasonable. We reject this argument.

**{¶28}** The Bells argue the Turners should pay the tax liability because Mrs. Turner received the tax notices in her name, filed them away, and later destroyed them rather than forwarding them to the Bells or returning them to the county treasurer. Mrs. Turner gave the following testimony at the 2009 trial:

> Q:    And have you been getting those real estate tax bills on those six
>        lots for the last 14 years?
> A:    I don't know if I get them all, but I got them.
>
> Q:    And what did you do with the bills?
> A:    I think I filed them.
>
> * * *
>
> Q:    And what did you do with the file?
> A:    I filed it away and then I made three years ago everything
>        (inaudible).
>
> Q:    So you destroyed them? Now did you ever send any to Mr. Bell or
>        Mrs. Bell?
> A:    Yes, I did, (inaudible)

**{¶29}** Given the inaudible portions of the transcript and fact that in the last part of the above quoted exchange counsel asked two questions before letting Mrs. Turner answer, it is unclear whether she is agreeing that she destroyed the notices, that she sent them to the Bells, or both. In any event, the fact that tax bills were addressed to

Mrs. Turner is not dispositive of who is liable for the taxes upon rescission of the land contract. And we fail to see what Mrs. Turner could accomplish by returning the notices to the treasurer or forwarding them to the Bells, who have continuously denied liability for paying those taxes. Therefore, we reject the Bells' argument.

**{¶30}** The Bells also complain that the court's ruling retroactively imposes personal liability on them for payment of the tax liability in the event that as a result of the pending tax foreclosure proceedings, the lots are sold for less than the amount of delinquent taxes, penalties, and interest. However, they fail to cite any authority that suggests that court's ruling is improper for this reason. We reject this argument.

**{¶31}** Finally, the Bells contend that the Turners should pay the entire tax liability because the Turners were the record owners of the land throughout these proceedings. Therefore, the Turners had all the perks of possession while the taxes accumulated. However, there is no evidence that the Turners profited from the land in any way.

**{¶32}** Nonetheless, we can discern no reasonable basis for the trial court's decision to order the Bells to pay the entire tax liability without any contribution by the Turners. Even though the Turners did not profit from the land during these proceedings, it is clear the Bells did not either. It appears the only "use" the property has served is as a location for dumping trash and junk, which the Turners were ordered to remove along with vegetative overgrowth. The land contract failed because of a *mutual* mistake of fact about the Turners' ability to obtain zoning permits. Likewise, the tax problem in this case has escalated due to the Bells' and Turners' *mutual* failure to vigorously prosecute their respective claims during the past 17 plus years. The Bells filed their complaint in January 1996, the Turners filed their counterclaim in March 1996, but the first trial did

not occur until December 2004.  From April 2000 until April 2004, it appears nothing happened on the case based on the complete lack of filings during that period.  The Bells and Turners have paid none of the taxes during these proceedings.  The tax bill grows each year, partly from interest and penalties on the unpaid taxes.  Armed with this knowledge, the Bells and Turners made no effort to mitigate damages by paying the taxes until the court decided the ultimate issue of whether the Bells, the Turners, or both were legally responsible for them.

**{¶33}** Given the Bells' and Turners' mutual mistake that led to the rescission, the fact that they did not profit from the land, and their mutual failure to mitigate the growing tax problem, we find the trial court abused its discretion when it ordered the Bells to pay the entire tax liability.  The only reasonable solution to the tax problem is for the Bells and Turners to share responsibility for the taxes, interest, and penalties.

**{¶34}** In its July 24, 2012 entry, the court ordered the Bells to pay the tax liability that accrued "since March 12, 1996, the date of the original contract entered into by Plaintiffs and Defendant Turner."  The original contract was actually entered into in May 1995.  However, the contract stated that the taxes would be prorated to the closing date, i.e., the Bells were responsible for the taxes to the closing date.  As we noted in *Bell II*, 172 Ohio App.3d 238, 2007-Ohio-3054, 874 N.E.2d 820, at ¶ 4, the closing occurred on June 9, 1995.  Even though the trial court rescinded the land contract, it would not be logical to order the Turners to pay any tax liability that accrued before the closing as that was never contemplated by the Bells or Turners.

**{¶35}** Accordingly, we modify the court's July 24, 2012 entry to state that the Bells are responsible for the payment of one-half of all the real estate taxes, interest,

and penalties which have accrued against the subject six parcels of real estate since June 9, 1995 (the date of closing) until July 24, 2012. The Turners are responsible for the payment of the other half of those real estate taxes, interest, and penalties. Any taxes, interest, and penalties that accrued prior to June 9, 1995, and after July 24, 2012, are the responsibility of the Bells. We affirm these modified portions of the court's judgment.

## VI. The Bells' Claims Against Quance

**{¶36}** In their third assignment of error, the Bells contend the court erred "in finding for the defendant Quance on the matter of the escrow." The Bells argue that Quance acted as an escrow agent and was supposed to hold $49,901.00 (the balance the Turners owed the Bells under the land contract) and disburse it to the Bells once the deeds and mortgages were recorded. The Bells complain that these documents were recorded, but Quance gave the money back to the lender involved in the transaction instead of them.

**{¶37}** The trial court did not explain why it ruled for Quance in the July 24, 2012 judgment entry, and none of the parties requested findings of fact and conclusions of law. Again, "[i]n the absence of findings of fact and conclusions of law, we generally must presume that the trial court applied the law correctly and must affirm if some evidence in the record supports its judgment." *McCarty*, 4th Dist. No. 08CA8, 2009-Ohio-4540, at ¶ 21, fn. 1. From the evidence, specifically Mrs. Turner's testimony, the trial court could have concluded that under the escrow agreement the Bells were not entitled to the escrowed funds until the Turners obtained zoning permits to place two trailers on each lot. This condition was never met, so Quance never had authority to

give the Bells the escrowed funds.  And to the extent the Bells suggest that Quance

wrongfully returned the money to the lender, they failed to explain or offer any evidence

as to how they were harmed by this transfer, especially in light of the fact that the land

contract has been rescinded.  Accordingly, we overrule the Bells' third assignment of

error and affirm the court's judgment as to Quance.

JUDGMENT AFFIRMED IN PART,<br>
MODIFIED IN PART, AND<br>
AFFIRMED AS MODIFIED.

.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED IN PART, MODIFIED IN PART, AND AFFIRMED AS MODIFIED and that Appellants and Appellees shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.:  Concur in Judgment and Opinion.

For the Court


BY: _____
William H. Harsha, Judge




**NOTICE TO COUNSEL**


**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**